UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:26-cv-60061-WPD

OSCAR RENE NUÑEZ,

    Petitioner,

v.

ELISA M. SUKKAR
Assistant Chief Immigration Judge,
Miami Krome (Detained) Immigration Court,
Executive Office for Immigration Review,

FIELD OFFICE DIRECTOR,
Miami Field Office,
U.S. Immigration and Customs Enforcement

    Respondents.
_____/

## ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS; REQUIRING BOND HEARING

**THIS CAUSE** is before the Court on Petitioner Oscar Rene Nuñez ("Petitioner")'s Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition") [DE 1], filed herein on January 9, 2026. Respondents filed their response on January 20, 2026. *See* [DE 9]. The Court held a hearing on the Petition on January 22, 2026, heard argument from both parties, and is otherwise fully advised in the premises. For the following reasons, the Petition is **GRANTED IN PART.**

    I.    BACKGROUND

Petitioner, Oscar Rene Nunez ("Petitioner"), is a native and citizen of Honduras. *See* [DE 1] at ¶ 1; [DE 9-1], Form I-213, Record of Deportable/Inadmissible Alien (Form I-213). The Petitioner entered the United States without inspection on or about March of 2007. [DE 1] ¶ 2. On

September 9, 2025, Petitioner was arrested by Florida Highway Patrol agents for operating a motor vehicle without a valid driver's license. Apart from that arrest, the Petitioner has no criminal record. [DE 1] ¶ 3. On September 9, 2025, local law enforcement encountered Petitioner at the Dade County Jail in Miami, Florida and transferred him to the custody of the U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO"). *See* [DE 9-1]. He was then transferred to the Florida Soft Side South detention facility, a/k/a "Alligator Alcatraz", which is operated by the Miami Krome Immigration Court. [DE 1] ¶ 4.

On October 8, 2025, ICE issued a Notice to Appear (NTA) charging him as inadmissible as "alien present in the United States who has not been admitted or paroled" in violation of INA § 212(a)(7)(A)(i). *See* [DE 9-1], [DE 1] ¶ 5. On October 29, 2025, Petitioner, represented by counsel, attended a preliminary master hearing at the immigration court at the Broward Transitional Center ("BTC") and case was reset for November 19, 2025, to address the NTA and the filing of any and all relief. *See* [DE 9-3], at p. 2. On November 19, 2025, Petitioner, represented by counsel, attended a second preliminary master hearing, and admitted the factual allegations and conceded the charges in the NTA. *See id*. at 3.

On December 15, 2025, Petitioner, represented by counsel, attended a custody hearing at the immigration court at the BTC. Id. The immigration judge (IJ) denied Petitioner's bond request on the basis that the immigration court lacks jurisdiction to determine bond pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *See* [DE 9-4], IJ Bond Order at 1; [DE 1] ¶ 6. Petitioner had until January 14, 2026, to file an appeal to the BIA but did not do so. *See* [DE 9-4], IJ Bond Order at 2; [DE 9-3] p. 3., Declaration of Deportation Officer Miranda. To date, Petitioner remains detained at Broward Transitional Center in Pompano Beach, Florida. *See* [DE 9-5], Detention History; [DE 9-3], Declaration of Deportation Officer at 3.

In Count I, Petitioner requests injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*. and asks this Court to enforce the class wide declaratory relief order in *Bautista v. Santacruz,* No. 5:25-CV-01873- SSS-BFM, 2025 WL 3289861, at 11 (C.D. Cal. Nov. 20, 2025) in the Petitioner favor. In Count II, Petitioner brings a habeas petition for injunctive relief ordering that he be afforded a bond hearing in accordance with 8 U. S. C. § 1226(a) and its implementing regulations and case law.

The Government contends that Petitioner is properly detained pursuant to 8 U. S. C. § 1225(b)(2) and therefore is not entitled to a bond hearing, and that the *Matter of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025) governs the IJ's actions.[1]

## II.  LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.  DISCUSION

Respondents do not contest jurisdiction or exhaustion.  Accordingly, the Court proceeds to the merits of the Petition, beginning with Count II. Respondents contend that Petitioner's entry into the United States without inspection or admission renders him an "applicant for admission"

---

[1] The Government also argues that this Court lacks jurisdiction to prohibit the transfer of Petitioner outside of the district pursuant to 8 U.S.C. § 1252(g), however this Court declines to grant this form of relief and instead will rule on the bond hearing issue.

under 8 U.S.C. § 1225(b)(2)(A), making him subject to mandatory detention and ineligible for a bond hearing. Petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a), which allows for the release of noncitizens on bond.

The Court begins with the statutory framework. Under the INA, § 1225 and § 1226 govern the detention of noncitizens before a final order of removal. Section 1225 covers "applicants for admission" who are noncitizens "present in the United States who have not been admitted." *Puga*, 2025 WL 2938369, at *3 (cleaned up). Section 1225(a)(3) requires all applicants for admission to be inspected by an immigration officer. 8 U.S.C. § 1225(a)(3). Certain applicants for admission may be subject to removal proceedings under § 1225(b). *See id.* § 1225(b); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020) (citations omitted). "Because section 1225 is mandatory, a 'noncitizen detained under section 1225(b)(2) may be released only if he is paroled for urgent humanitarian reasons or significant public benefit.'" *Puga*, 2025 WL 2938369, at *3 (quoting *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025). Section 1225(b)(2) applies where an alien is "seeking admission" into the United States. 8 U.S.C. § 1225(b)(2)(A).

Unlike § 1225, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226(a) sets out a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General," and authorizes the Attorney General to "continue to detain the arrested alien[,]" release him on a "bond of at least $1,500[,]" or release him on "conditional parole[,]" 8 U.S.C. § 1226(a)(1)–(2). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that determination in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025) ("To be sure, a noncitizen detained under § 1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").

Respondents contend that Petitioner qualifies as "an alien seeking admission under 8 U.S.C. § 1225(b)(2)(A)"—despite having been physically present in the United States for three years before his arrest and detention—because § 1225(b)(2)(A) applies broadly to all applicants for admission. In contrast, Petitioner asserts that § 1225 applies only to noncitizens actively "seeking admission" at the border or its immediate functional equivalent.

Whether Petitioner is detained under § 1225(b)(2) or § 1226(a) is an issue of statutory interpretation that hinges on the meaning of "seeking admission." The Court thus applies traditional tools of statutory construction, beginning with the plain meaning of the statutes, to decipher the meaning of that phrase. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003); *see also Fed. Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1307 (11th Cir. 2007).

To begin, the phrase "seeking admission" is ambiguous in the context of the INA. *See* 8 U.S.C. §§ 1101, 1225. Section 1225 defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" *Id*. § 1225(a)(1). And "admission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id*. § 1101(a)(13).

But the INA does not define "seeking admission." *Id*. § 1225(b)(2)(A); *see generally id*. § 1101. Some courts have noted that the phrase "implies action—something that is currently

occurring, and . . . would most logically occur at the border upon inspection." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025); *see also Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at *11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). And in the context of the title of § 1225, which references "arriving" aliens, § 1225; and its function—establishing an inspection scheme for when to allow aliens into the country—the language appears susceptible to multiple interpretations. *See Yates v. United States*, 574 U.S. 528, 537 (2015) ("The plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." (cleaned up)).

Next, the Court turns to the structure of § 1225 and § 1226, and their legislative history—which each support Petitioner's interpretation. "Whereas § 1225 governs removal proceedings for 'arriving aliens,' § 1226(a) serves as a catchall." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). As the Supreme Court noted in *Jennings*, § 1226 "creates a default rule" that "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 303. The inclusion of a "catchall" provision in § 1226, particularly following the more specific provision in § 1225, is "likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories." *Pizarro Reyes*, 2025 WL 2609425, at *5; *see also Barrera*, 2025 WL 2690565, at *4 (citation omitted). The circumstances surrounding Petitioner's arrest by warrant align with § 1226(a), not § 1225(b)(2)(A).

Additionally, a recent amendment to § 1226 would be rendered meaningless under Respondents' interpretation of § 1225. *See Puga*, 2025 WL 2938369, at *5; *Rosado*, 2025 WL 2337099, at *9. In January 2025, the Laken Riley Act ("LRA"), Pub. L. No. 119-1, section 2, 139

statute 3, 3 (2025), added § 1226(c)(1)(E), which "mandates detention for noncitizens who (i) "are inadmissible under § 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), § 1182(a)(6)(C) (obtaining a visa, documents, or admission through misrepresentation or fraud), or § 1182(a)(7) (lacking valid documentation)" and (ii) "have been arrested for, charged with, or convicted of certain crimes." *Puga*, 2025 WL 2938369, at *5 (citing 8 U.S.C. § 1226(c)(1)(E)(i)–(ii)).

If Respondents' interpretation of § 1225 is correct—that the mandatory detention provision in § 1225(b)(2)(A) applies to all noncitizens present in the United States who have not been admitted—then Congress would have had no reason to enact § 1226(c)(1)(E). *See Lepe v. Andrews*, No. 25-cv-01163, 2025 WL 2716910, at *6 (E.D. Cal. Sept. 23, 2025) (citations omitted). "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). "This principle . . . applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times." *Bilski v. Kappos*, 561 U.S. 593, 608 (2010) (citation omitted). "The Court will not find that Congress passed the LRA to perform the same work that was already covered by § 1225(b)(2)." *Puga*, 2025 WL 2938369, at *5; *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025); *see also Lepe*, 2025 WL 2716910, at *6; *Barrera*, 2025 WL 2690565, at *4; *Rosado*, 2025 WL 2337099, at *9; *Pizarro Reyes*, 2025 WL 2609425, at *5; *Gomes*, 2025 WL 1869299, at *6–7.

Respondents' reliance on the BIA's decision in *Matter of Yajure Hurtado*—rejecting the argument that a noncitizen who entered the United States without inspection and has resided here for years is not "seeking admission" under § 1225(b)(2)(A)—is misplaced. Under *Loper Bright*, the Court need not defer to the BIA's interpretation of law simply because the statute is ambiguous.

*See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

As explained, the statutory text, context, and scheme of § 1225 do not support a finding that a noncitizen is "seeking admission" when he never sought to do so. Additionally, numerous courts that have examined the interpretation of § 1225 articulated by Respondents—particularly following the BIA's decision in *Matter of Yajure Hurtado*—have rejected their construction and adopted Petitioner's. *See, e.g., Jhon Peter Hyppolite v. Noem*, No. 25-cv-4303, 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) (collecting cases); *Pizarro Reyes*, 2025 WL 2609425, at *7 (same); *Lepe*, 2025 WL 2716910, at *4 (same); *Barrera*, 2025 WL 2690565, at *5 (same). *But see Chavez v. Noem*, No. 25-cv-02325, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025) (citations omitted).

For these reasons, contrary to the Immigration Judge's finding that he lacks jurisdiction to consider Petitioner's bond request, the Court finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and as such, Petitioner is entitled to an individualized bond hearing as a detainee under § 1226(a).

In Count One of the Petition, Petitioner argues he is subject to the class-wide injunction under *Bautista*. The Court declines to address this portion of the Petition, having independently determined that Petitioner's is entitled to a bond hearing.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition [**DE 1**] is **GRANTED in part**. **Respondents shall afford Petitioner an individualized bond hearing consistent with 8 U.S.C. § 1226(a) within seven days**

**and file a notice in the record upon the completion of the bond hearing indicating that a bond hearing has been held.** Failure to file a notice in the record within seven days may result in the Court ordering the immediate release of Petitioner.

2. The Court affirmatively finds that the Immigration Judge has jurisdiction to conduct the bond hearing.

3. Count One of the Petition is **DISMISSED without prejudice**.

4. All pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

5. The Court **RETAINS JURISDICTION** to enforce this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of January, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to counsel of record